UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTA FREITAG, Court-appointed permanent receiver for ANI Development LLC, American National Investments, Inc., and their subsidiaries and affiliates,<br><br>Plaintiff,<br><br>v.<br><br>LA JOLLA BRIDGE, LLC, a California limited liability company, FRONTIER GLOBAL PARTNERS, a California limited liability company, HORACIO VALEIRAS, and DOES 1-10,<br><br>Defendants. | Case No.:  3:21-cv-01642-LAB-AHG<br><br>**ORDER RESOLVING JOINT MOTION FOR RESOLUTION OF DISCOVERY DISPUTE REGARDING PLAINTIFF'S FIRST SETS OF INTERROGATORIES TO DEFENDANTS**<br><br>[ECF No. 17] |

Before the Court is the parties' Joint Motion for Resolution of Discovery Dispute Regarding Plaintiff's First Sets of Interrogatories to Defendants. ECF No. 17. For the reasons that follow, the Court resolves the Joint Motion in Plaintiff's favor, and **GRANTS** Plaintiff's motion to compel Defendants' responses to her First Sets of Interrogatories.

## I. BACKGROUND

The Court held a Case Management Conference ("CMC") on March 22, 2022 to set the case schedule in this matter. ECF No. 15. In preparation for the CMC, the parties filed a Joint Case Management Statement ("JCMS") on March 21, 2022. ECF No. 12. The parties first outlined the present dispute to the Court in the JCMS, explaining that the plaintiff in this matter, Krista Freitag ("Plaintiff" or the "Receiver"), who is the permanent court-appointed Receiver in a related equitable receivership case in this Court, *SEC v. Champion-Cain et al.*, Case No. 3:19-cv-01628-LAB-AHG, propounded interrogatories on the Defendants in this action prior to the parties' Rule 26(f) conference to learn the identities of the members/investors in the two iterations of La Jolla Bridge, LLC (the "LJB entities"). Plaintiff intends to amend her Complaint in this action to add the members/investors as additional defendants, substituting them in for the Doe Defendants currently named. In the JCMS, Defendants took the position that they could not share such information without the consent of the members, asserting the members' privacy interests. *Id.* at 8-9.[1] Therefore, the Court set a briefing schedule for the parties to brief the dispute, and the parties file the instant joint motion for resolution of the dispute on April 26, 2022. ECF No. 17.

La Jolla Bridge, LLC is one of the named Defendants in this action, but as noted, there have been two different iterations of that entity. Plaintiff refers to the first iteration of the La Jolla Bridge, LLC entity as "LJB No. 1" and the second iteration as "LJB No. 2."

---

[1] Defendants have lodged other objections to Plaintiff's interrogatories beyond the assertion of the members' privacy interests, which the Court discusses in more detail below.

In her Interrogatories, Plaintiff defines LJB No. 1 as "La Jolla Bridge LLC, a California limited liability company, identified as entity number 201609710198, with a registration date of March 28, 2016, by the California Secretary of State." *See* ECF No. 17-1 at 7. LJB No. 2 is defined as "La Jolla Bridge LLC, a California limited liability company, identified as entity number 201900810690, a with a registration date of January 3, 2019, by the California Secretary of State." *Id.* at 8.

To learn the identities of the investors/members of the LJB entities, Plaintiff served the same set of five interrogatories (ROGs) on each of the four Defendants in this action,[2] asking them to provide information regarding the identities of the investors in the LJB entities. The five ROGs at issue seek information about both LJB No. 1 and LJB No. 2, and include two matching pairs of requests (ROG Nos. 1 & 3 and ROG Nos. 2 & 4) seeking identical information for each respective entity, plus a fifth request seeking additional information on any person identified in the responses to ROGs 1-4 who is not a natural person. Specifically, ROGs 1 & 3 request each Defendant to:

> IDENTIFY all PERSONS who held a membership interest in [LJB No. 1/LJB No. 2] at any time, including for each such PERSON, (a) the percentage or share of their membership interest, (b) the beginning and ending dates of when they held their membership interest, (c) their legal name, (d) their present or last-known physical address, (e) their email address, and [(f)] their telephone number(s).

*See, e.g.*, ECF No. 17-1 at 8, 9.

ROGs 2 & 4 request each Defendant to:

> IDENTIFY all PERSONS who invested money in, contributed money to, or loaned money to [LJB No. 1/LJB No. 2] at any time, including, for each such PERSON, (a) the amount(s) or value(s) of their investment(s), contribution(s), or loan(s), (b) the date(s) of their investment(s), contribution(s), or loan(s), (c) their legal name, (d) their present or last-known physical address, (e) their

---

[2] Although there are only three named Defendants in the action, because there are two LJB entities, Plaintiff served the same set of five interrogatories on a total of four responding parties—LJB No. 1, LJB No. 2, Frontier Global Partners, LLC, and Horacio Valeiras.

email address, and [(f)] their telephone number(s).

*See, e.g., id.*

Finally, ROG No. 5 requests:

> For all PERSONS identified in your responses to Interrogatories Nos. 1 to 4 who are anything other than a natural person, IDENTIFY all owners, members, managers, shareholders, directors, officers, investors, beneficiaries, trustees, partners, or other stakeholders in or of such PERSONS, including, for each such PERSON, (a) their legal name, (b) their present or last-known physical address, (c) their email address, and (d) their telephone number(s).

*See, e.g., id.* at 9. Thus, the five requests at issue can be distilled down to two disputes concerning Plaintiff's requests for information regarding the identities and contact information of (1) any members in LJB No. 1 or LJB No. 2; or (2) any investors in or lenders to LJB No. 1 or LJB No. 2.

Defendants propounded several objections to Plaintiff's ROGs: (1) The ROGs violate the privacy rights, including the right to financial privacy, of individuals who are not a party to the action, and that those privacy interests are protected by Article I, Section I of the California Constitution; (2) procedurally, the ROGs were improperly served prior to the parties' Rule 26(f) conference; (3) due to the number of subparts in each ROG, the total number of Interrogatories is in excess of the limits proscribed by Rule 33(a)(1); (4) subdivision (a) of each ROG is "vague as to time because there is no date associated with the interrogatory"; and (5) subdivisions (a) and (b) are unduly burdensome because Plaintiff has equal access to LJB No. 1's documents, which LJB No. 1 produced in response to the Receiver's subpoenas over a year ago. *See, e.g.*, ECF No. 17-1 at 35-41.

Despite raising these five objections in response to each of the ROGs at issue, Defendants focus primarily on their privacy argument in the Joint Motion, mentioning the procedural objections regarding the timing of Plaintiff's service of the ROGs prior to the Rule 26(f) conference and the "excessive subparts" of the ROGs only in passing in their Preliminary Statement but not in their Argument section, and not mentioning the vagueness or undue burden objections at all. *See generally* ECF No. 17. For that reason, the Court

will consider only those three objections discussed by Defendants in the Joint Motion.

## II. DISCUSSION

### a. Rule 33(a)(1) interrogatory limitations

Defendants object that Plaintiff's interrogatories exceed the presumptive limitation proscribed by Federal Rule of Civil Procedure 33(a)(1), which states that "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts" unless otherwise stipulated or ordered by the Court. Fed. R. Civ. P. 33(a)(1). As noted, here, Plaintiff served a total of 5 interrogatories on each Defendant, but ROGs 1-4 have 6 subparts ((a)-(f)) and ROG No. 5 has 4 subparts, for a total of 28 subparts and 5 "preamble" requests.

Numerous courts have grappled with formulating a bright-line test to determining "when discrete, separate subjects should be treated as multiple interrogatories." *See, e.g.*, *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 443-45 (C.D. Cal. 1998); *Ginn v. Gemini, Inc.*, 137 F.R.D. 320, 321–22 (D. Nev. 1991); *Kendall v. GES Exposition Servs., Inc.*, 174 F.R.D. 684, 685-86 (D. Nev. 1997); *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, 315 F.R.D. 191, 194-97 (E.D. Tex. 2016); *Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp.*, No. 3:16-CV-00024-RGJ-RSE, 2019 WL 1261352, at *3-*4 (W.D. Ky. Mar. 19, 2019). Both the *Ginn* and *Kendall* courts held that subparts should not be considered separate and discrete interrogatories "if they are logically or factually subsumed within and necessarily related to the primary question." *Ginn*, 137 F.R.D. at 322; *Kendall*, 174 F.R.D. at 685. This has been characterized as the "related question" approach, and has alternatively been articulated as: "'if the first question can be answered fully and completely without answering the second question' then the second question is totally independent of the first and not factually subsumed within it." *Phoenix*, 2019 WL 1261352, at *4 (discussing different approaches and opining that "[m]ost courts have followed the 'related question' approach").

Many courts, including the *Phoenix* court, have concluded that no matter how one defines the verbal formulation of the term "discrete subparts" from Rule 33, it is essential

to temper any test with the pragmatic question of whether an interrogatory "'threatens the purpose of Rule 33' by combining several lines of inquiry into one interrogatory." *Id.* (quoting *Warren v. Bastyr Univ.*, No. 2:11-cv-1800, 2013 WL 1412419, at *1 (W.D. Wash. Apr. 8, 2013)). When applying this so-called "pragmatic approach," the Court balances "the competing purposes of Rule 33(a)(1): allowing reasonable latitude in formulating an inquiry to elicit as complete an answer as possible, while at the same time not allowing the multiplication of interrogatories which would defeat the purposes of Rule 33's limits." *Phoenix*, 2019 WL 1261352, at *4; *see also Eli Lilly*, 315 F.R.D. at 196-97.

Here, the Court need not grapple long with the question of what constitutes a "discrete subpart" in order to reject Defendants' objection. Each interrogatory's "preamble" section asks Defendants to "identify all persons…." From there, the subparts (a) and (b) of ROGs 1-4 request additional information regarding the amounts and timing of those persons' membership interests in or investments, contributions, or loans to the LJB entities. But significantly, all other subparts in ROGs 1-5 request the legal name (subpart (c) of ROGs 1-4 and subpart (a) of ROG 5), physical address (subpart (d) of ROGs 1-4 and subpart (b) of ROG 5), email address (subpart (e) of ROGs 1-4 and subpart (c) of ROG 5), and telephone number of each such person (subpart (f) of ROGs 1-4 and subpart (d) of ROG 5).

At a minimum, the request in subpart (c) of ROGs 1-4 and subpart (a) of ROG 5 for "the legal name" of each person identified in response to the preamble question is "logically or factually subsumed within and necessarily related to the primary question" of the persons' identities. *Kendall*, 174 F.R.D. at 685. Moreover, subparts (d)-(f) of ROGs 1-4 and subpart (d) of ROG 5, seeking various forms of contact information for the identified persons (email address, physical address, and phone number), do not represent discrete lines of inquiry. To treat Plaintiff's delineation of her requests for different forms of contact information for the identified persons as separate lines of inquiry would be an unduly hypertechnical approach, and one that does not "allow[] reasonable latitude in formulating an inquiry to elicit as complete an answer as possible[.]" *Eli Lilly*, 315 F.R.D. at 196-97.

Therefore, even if the Court were to find that the 8 total subparts of ROGs 1-4 seeking information regarding the amounts and timing of the identified persons' membership interests/loans/contributions/investments should be considered discrete lines of inquiry from the identified persons' names and contact information, Plaintiff's five interrogatories do not exceed the presumptive 25-interrogatory limit of Rule 33(a)(1). The Court thus rejects Defendants' objection on the basis that Plaintiff's interrogatories are excessive.

### b. Discovery served prior to Rule 26(f)

In their responses, Defendants objected to each interrogatory on the basis that Plaintiff served the interrogatories prior to the parties' Rule 26(f) conference. Plaintiff served the interrogatories at issue on February 28, 2022. *See* Exs. 1-4 to Pham Decl., ECF No. 17-1 at 9, 16, 23, 30. The parties were required to meet and confer pursuant to Rule 26 by March 14, 2022, and after they timely did so, they filed their Rule 26(f) report on March 21, 2022. ECF No. 12. Defendants themselves noted in their objections that the timeliness objection "will likely be waived in the meet and confer process that is already anticipated following the Case Management Conference." *See, e.g.*, Ex. 5 to Pham Decl., ECF No. 17-1 at 36. It is unclear to the Court whether this objection was indeed waived—Defendants raise the issue in passing in their Preliminary Statement, but do not make any argument regarding this objection in their Argument section of the Joint Motion. *Compare* ECF No. 17 at 3 (noting that "the interrogatories were served before the Rule 26(f) meet and confer"), *with id.* at 8-11 (discussing only the privacy objection in their Argument section).

At this juncture, the Court sees no reason to delay or thwart discovery requests on the basis that they were served before the Rule 26(f) conference, and Defendants have cited to no authority to support such an action. As the Rule 26(f) conference has now taken place and the Scheduling Order issued, the Court declines to take the timing of the service into consideration in determining whether to compel responses to the interrogatories. *See* ECF Nos. 14, 15.

\\

### c. Right to financial privacy

Defendants' primary objection at issue in the Joint Motion is that the disclosure of the identities of the investors and members in the LJB entities would violate the privacy rights of those persons.

The parties agree that the Court should weigh the Defendants' asserted privacy right against Plaintiff's need for the information sought, although they apparently disagree as to whether the Court should apply the right to privacy protected by the California constitution or the more general right to privacy recognized by federal courts, which derives from the U.S. Constitution. *Compare* ECF No. 17 at 6-7 (the Receiver citing case law concerning the federal "right to privacy," and quoting, *inter alia*, *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995), which refers in turn to "a constitutionally-based right to privacy that can be raised in response to discovery requests" that is "ordinarily recognize[d]" by federal courts) *with id.* at 3, 11 (Defendants relying on "[t]he fundamental right to privacy in California" codified in California Civil Code § 1798.1, and citing state court case law "recognizing the inalienable right to privacy under the California Constitution 'extends to one's confidential financial affairs'").

Although the substantive state law of the California Uniform Voidable Transactions Act ("CUVTA") forms the basis of Plaintiff's claims in this case, the case does not arise in diversity. Rather, the basis of the Court's jurisdiction over the Receiver's clawback actions is 28 U.S.C. §§ 1345 and 1367, as these cases are ancillary to the *SEC v. Champion-Cain* action, brought by a United States government agency. *See* ECF No. 1 ¶ 1. Accordingly, because this case arises under federal question jurisdiction, the Court applies federal privacy law.

Although a general right to privacy may be raised in response to discovery requests, the federal right to privacy "is not an absolute bar to discovery[.]" a *G&G Closed Cir. Events, LLC v. Cal. Ctr. for the Arts, Escondido, Found.*, No. 20-CV-2137-JLS-NLS, 2021 WL 4690503, at *3 (S.D. Cal. Oct. 7, 2021). "Resolution of a privacy objection . . . requires a balancing of the need for the information sought against the privacy right asserted." *Soto*,

162 F.R.D. at 616. Courts have further explained that use of a protective order may "minimize the impact" of disclosure of private information. *Id.* (citation omitted).

Defendants have not explained how information such as the names or contact information of the members of the LJB entities is particularly private or sensitive. Indeed, even when courts have applied the much more protective "compelling need" standard in cases involving the California constitutional right to privacy,[3] courts have noted that privacy interests in information such as "names, addresses, and phone numbers must be distinguished from those more intimate privacy interests such as compelled disclosure of medical records and personal histories" and have accordingly allowed discovery of such information even over privacy-based objections. *Wiegele v. Fedex Ground Package Sys.*, No. 06-CV-01330JMPOR, 2007 WL 628041, at *2 (S.D. Cal. Feb. 8, 2007); *Artis v. Deere & Co.*, 276 F.R.D. 348, 352-53 (N.D. Cal. 2011).

Plaintiff argues that she needs to know the identities of the LJB entity investors because, according to Defendants, they are subsequent transferees who received the

---

[3] The "compelling need" or "compelling interest" test was established in *White v. Davis*, 533 P.2d 222, 234 (Cal. 1975), and required any invasion into the state constitutional privacy right to be "justified by a compelling interest." However, the Supreme Court of California has since disavowed the "compelling need" test except in instances where the information sought amounts to "an obvious invasion of an interest fundamental to personal autonomy." *Williams v. Superior Ct.*, 398 P.3d 69, 86-87 (Cal. 2017). When lesser interests are at stake, courts should instead apply the framework established in *Hill v. National Collegiate Athletic Ass'n*, 865 P.2d 633 (Cal. 1994) (en banc), which requires the party asserting a privacy right to establish (1) a legally protected privacy interest, (2) an objectively reasonable expectation of privacy in the given circumstances, and (3) a threatened intrusion that is serious. The propounding party may then raise in response "whatever legitimate and countervailing interests disclosure serves, while the party seeking protection may identify feasible alternatives that serve the same interests or protective measures that would diminish the loss of privacy. A court must then balance these competing considerations." *Williams*, 398 P.3d at 84 (citing *Hill*, 865 P.2d at 654-57). As discussed, the Court finds that federal privacy law applies in this case, but the federal balancing test does not differ significantly from the *Hill* framework established by state law, nor would the outcome be different.

fictitious profits at issue when the LJB Entities dissolved and distributed the funds to its members. ECF No. 17 at 5 (citing to the parties' Joint Case Management Statement, ECF No. 12 at 6, 12). Therefore, Plaintiff wishes to learn these subsequent transferees' identities to name them as defendants as soon as possible in this case, so that the Court may handle her claims "on a single, comprehensive track," rather than seeking to amend the Complaint after the parties have engaged in substantive discovery. ECF No. 17 at 5.

Rather than arguing that the information sought by the Receiver is inherently sensitive, Defendants' primary argument is that the balancing test tips in their favor because the Receiver's fraudulent transfer claims against subsequent transferees have no merit in general, and thus Plaintiff's "need for the information" is nil. Specifically, Defendants contend that the "profits" received by the LJB Entities, which the Receiver wishes to claw back to the receivership estate by way of this action, were not profits from the Ponzi scheme at all, but were instead interest payments on loans made by the LJB entities to Kim Funding, LLC ("KFL"), which is not itself a receivership entity. Although KFL then in turn invested the LJB Entities' loaned funds into the Ponzi scheme, Defendants argue that, because the LJB entities merely loaned money to KFL and their loans were secured by promissory notes guaranteed by Kim Peterson, their "profits" (in the form of repaid interest on their loans to KFL) are not fraudulent transfers subject to clawback pursuant to CUVTA. Therefore, Defendants posit, "[i]f the Receiver's entire theory of liability is off, as it is here, there is no good reason to drag 20 new defendants into this action that will all raise the same defects and dissipate Receivership assets further." ECF No. 17 at 11. Based on this argument, Defendants contend that disclosure of the identities of the LJB entity investors/members is "particularly sensitive" because of the Receiver's intent to name them as additional defendants. *Id.*

Parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Generally speaking, a responding party's position that the propounding party's case has no merit is not a legitimate reason to withhold discovery. Otherwise, such rationale

could be used to justify refusal to participate in discovery altogether. After all, no information is "proportional to the needs" of a case that has no merit. Therefore, the Court is reticent to wade too far into the merits of the case to decide the present dispute.

Nonetheless, to engage more precisely with the parties' arguments regarding the balancing of Plaintiff's need for the information against the identified privacy right at stake, the Court will address Defendants' argument that their interest payments from KFL do not constitute profits from the Ponzi scheme. Under CUVTA, a transfer is voidable as to present and future creditors where the debtor made the transfer with actual intent to defraud any creditor. Cal. Civ. Code § 3439.04(a)(1). Actual intent to defraud is presumed when the payments were made from a Ponzi scheme. *In re Slatkin*, 525 F.3d 805, 809 n.1 (9th Cir. 2008). Key to Defendants' arguments here, CUVTA provides a defense to a clawback claim based on actual fraud where the transferee "took in good faith and for a reasonably equivalent value give the debtor[,]" and such defense protects any subsequent transferee or obligee after the initial transferee who took in good faith. Cal. Civ. Code § 3439.08(a).

Defendants acknowledge that KFL used the money loaned to it by the LJB entities to invest in the Ponzi scheme. The Court will assume for purposes of the motion that the profits earned by KFL from the scheme are fictitious, because Defendants do not argue otherwise. Rather, Defendants contend that, because all of the payments they received were from KFL, and KFL is not a receivership entity, they were never direct investors in the Ponzi scheme. *See* ECF No. 17 at 9. Moreover, they argue that they took in good faith and for reasonably equivalent value, even if KFL did not, and thus the "profits" they received in the form of direct interest payments from KFL on their loans to KFL are not voidable transfers subject to clawback by the receivership estate. *Id.* at 10. *See also id.* at 11 ("If [] the Receiver's allegations are interpreted to mean that Champion-Cain paid profits to KFL and that KFL then transferred those profits to the LJB Entities, then the intent of KFL still controls and the LJB Entities still took KFL's interest payments on loans for value and in good faith."). With respect to the individual members/investors in the LJB entities, Defendants argue that this defense applies even more forcefully to them, because those

individual members were "paid pursuant to their LLC membership interests" and have a legal identity that is separate from the LJB entities themselves. *Id.* at 10.

Turning to the text of the provision setting forth the good-faith defense to a clawback claim based on actual fraud, section 3439.08(a) states: "A transfer or obligation is not voidable under paragraph (1) of subdivision (a) of Section 3439.04, against a person that took in good faith and for a reasonably equivalent value given the debtor or against any subsequent transferee or obligee." Defendants cite to no authority in support of their argument that it is "the intent of KFL" that controls when considering whether transfers to subsequent transferees were made with actual intent to defraud within the meaning of Cal. Civ. Code § 3439.04(a)(1). As another court has noted, there is "some ambiguity in the statute's use of the phrase 'subsequent transferee[.]'" *In re Sexton*, 166 B.R. 421, 427 (Bankr. N.D. Cal. 1994). Nonetheless, the *Sexton* court read this provision "to provide a defense to a subsequent transferee only if its transferor (or someone earlier in the transfer chain) received its transfer in good faith and for reasonably equivalent value." *Id.* Therefore, at least one court has interpreted that provision of CUVTA as granting a good-faith defense to a subsequent transferee in the chain of transfers only where the initial transfer was cloaked with such protection.

Similarly, the Ninth Circuit's Bankruptcy Appellate Panel has observed that the good-faith defense of Section 3439.08(a) "appears to be an 'actual injury' requirement: if the debtor received 'reasonably equivalent value' in exchange for the transfer, the transfer did not harm the debtor's financial condition. But it is not only an 'actual injury' requirement: even if the transferee paid full value for the asset, such that the transfer had no net negative effect on the transferor's financial condition, the transferee still has to give up the transferred asset if the transferee did not act in 'good faith.'" *In re Medina,* 619 B.R. 236, 242 n.7 (B.A.P. 9th Cir. 2020), *aff'd*, No. 20-60045, 2021 WL 3214757 (9th Cir. July 29, 2021). If the Court were to follow the reasoning of this analysis, the intent of the initial transferee (here, KFL) in transferring fictitious profits to subsequent transferees would not control, because the financial condition of the debtor (here, the receivership estate) was

still harmed by the receivership entities' initial transfer to KFL of fictitious proceeds from the Ponzi scheme.

Moreover, Plaintiff has alleged not only actual fraud but also constructive fraud under CUVTA in this case. ECF No. 1 ¶ 31. Constructive fraud can render a transfer voidable where the debtor made the transfer "[w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either [] was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction[, or] [i]ntended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." Cal. Civ. Code § 3439.04(a)(2)(A)-(B). Importantly, the good-faith defense set forth in § 3439.08(a) expressly applies only to "paragraph (1) of subdivision (a) of Section 3439.04," i.e., only to claims of actual fraud. *See, e.g.*, *Klein v. Beck*, No. 4:10-CV-0088-EJL-REB, 2012 WL 976157, at *5 (D. Idaho Mar. 22, 2012), *aff'd*, 589 F. App'x 357 (9th Cir. 2015) (noting that "there is no good faith defense to a constructive fraudulent transfer" under identical provisions of Idaho's Uniform Voidable Transactions Act, Idaho Code Ann. §§ 55-913; 55-917). Therefore, the Court cannot find that a good-faith defense to Plaintiff's actual fraud claim would necessarily save Defendants or the would-be investor/member defendants from liability on the constructive fraud claim, such that Plaintiff has no need for information regarding the identities of the LJB Entity members/investors to try to recoup from them funds that originated from the receivership entities as part of the Ponzi scheme.

Finally, even assuming that Defendants are correct that the good-faith defense of Cal. Civ. Code § 3439.08(a) renders Plaintiff's clawback claims against subsequent transferees after KFL meritless, because KFL had no fraudulent intent and the LJB Entities and their investors/members took the loan interest payments and subsequent distributions in good faith and for a reasonably equivalent value, that argument is raised far too

prematurely. "The issue of good faith under UFTA § 8(a)[4] is a defensive matter as to which the defendants asserting the existence of good faith have the burden of proof." *In re Cohen*, 199 B.R. 709, 718 (B.A.P. 9th Cir. 1996); *In re Medina*, 619 B.R. 236 at 242 n.7 ("[S]ection 3439.08(a) is an affirmative defense, not an element of the creditor's case: the transferee has the burden of proof under that section."). Thus, Defendants' argument would be better suited to a summary judgment motion after the facts of the case have been developed through discovery. *See, e.g.*, *In re Int'l Mfg. Grp., Inc.*, 538 B.R. 22, 33 (Bankr. E.D. Cal. 2015) (declining to consider a good-faith defense to a fraudulent transfer claim on a 12(b)(6) motion because "good faith is not susceptible of precise definition and the analysis, being intensely factual, must be made on a case-by-case basis") (internal quotation marks, alteration, and citation omitted). The Court will not deny discovery to Plaintiff on the basis that the as-yet-unnamed individual investor/member defendants would certainly prevail on such an affirmative defense before they have even been brought into the case, let alone raised the defense on their own behalf.

To be clear, the Court cannot and does not herein decide the merits of Defendants' or the would-be individual investor/member defendants' affirmative defenses to Plaintiff's claims under Cal. Civ. Code. § 3439.08(a). The Court has provided the above analysis to demonstrate why it would be premature at best and ***potentially*** erroneous to adopt

---

[4] UFTA § 8(a) is the federal Uniform Fraudulent Transfers Act's parallel provision to CUVTA's § 3439.08(a). *See, e.g.*, *In re Medina,* 619 B.R. at 241 n.4 ("The UVTA is a relatively new statute with ancient roots. The UVTA, adopted in California in 2015 and effective January 1, 2016, is a renamed and slightly revised version of the Uniform Fraudulent Transfers Act ('UFTA'), which California enacted in 1986. The UFTA replaced the Uniform Fraudulent Conveyances Act ('UFCA'), which was adopted in California in 1939. The provisions of UVTA, UFTA, and UFCA that are relevant to this appeal are identical in substance"); *Durkin v. Shields*, No. 92-1003-IEG (LSP), 1997 WL 808636, at *3 (S.D. Cal. Aug. 14, 1997) (noting that California has "enacted the Uniform Fraudulent Transfers Act ('UFTA')" and citing to Cal. Civ. Code. §§ 3439.04(a) and 3439.08(a) as setting forth the parallel state law provisions to the actual fraud and good-faith defense provisions of UFTA).

Defendants' argument that "the intent of KFL [] controls" in determining whether the LJB Entities or their individual investors/members will prevail on their affirmative defenses, and to accordingly find that Plaintiff has no need for the identities and contact information of the investors/members to whom the LJB Entities distributed the funds at issue. Under the relevant balancing test here, the Court finds that Plaintiff has shown a sufficient need for the information sought in the ROGs at issue in order to develop the facts underlying their fraudulent transfer claims, and that Defendants have not shown a countervailing privacy interest that outweighs Plaintiff's need.

Accordingly, Plaintiff's motion to compel Defendants' responses to each of Plaintiff's first sets of special interrogatories served on Defendants is **GRANTED**.

### III.  CONCLUSION

Based on the foregoing, the Court resolves the parties' Joint Motion for Resolution of Discovery Dispute Regarding Plaintiff's First Sets of Interrogatories to Defendants (ECF No. 17) in Plaintiff's favor, and hereby **GRANTS** Plaintiff's motion to compel responses to the Receiver's (1) Interrogatories to Defendant La Jolla Bridge LLC (Entity No. 201609710198) (Set One); (2) Interrogatories to Defendant La Jolla Bridge LLC (Entity No. 201900810690) (Set One); (3) Interrogatories to Defendant Frontier Global Partners, LLC (Set One); and (4) Interrogatories to Defendant Horacio Valeiras (Set One).

The deadline for Defendants to provide responses to the Interrogatories is **June 22, 2022**. Additionally, because the deadline for Plaintiff to amend the Complaint is fast approaching, the Court hereby **EXTENDS** the deadline for the parties to file any motion to join other parties, to amend the pleadings, or to file additional pleadings from June 17, 2022 to **July 22, 2022**.

**IT IS SO ORDERED**.

Dated:  June 8, 2022

_____
Honorable Allison H. Goddard
United States Magistrate Judge